REQUESTED BY: The Honorable E. Benjamin Nelson Governor
You have asked whether the Nebraska State Patrol may lend undercover license plates to allied agencies for use in criminal investigations. We assume that by "allied agencies" you mean governmental units, whether state, federal or local, with the responsibility of investigating alleged criminal behavior.
Our answer is yes, if such use is approved by the Director of the Department of Motor Vehicles.
In 1997 the legislature enacted Neb. Rev. Stat. §60-304, a law addressing the issuance of undercover plates by the Department of Motor Vehicles. As we understand it, the Department had been issuing such plates for a number of years as a courtesy to various law enforcement agencies but concerns had arisen about the lack of express legislative authorization. Also, there may have been a concern that the privilege was being abused in some cases and it was apparently felt that greater accountability was needed.
The law provides that such plates may be issued to state, county, city, or village law enforcement agencies for "legitimate criminal investigatory purposes." Certain agencies and officers are then listed by name or title as authorized recipients, together with the authorized uses of the plates. The State Patrol is one of four groups which are authorized to use the plates for state law enforcement purposes.
The law neither specifically authorizes nor prohibits the State Patrol from sharing undercover plates for authorized purposes. The Legislature did recognize that undercover plates might be shared and did not elect to prohibit this. During legislative debate, Senator Kristensen, the bill's sponsor was asked by Senator Chambers if the authorized uses mentioned in the bill were broad enough to permit a local or state law enforcement agency to provide their undercover plates to the F.B.I. and the response was that there was no practical way to control who would be driving a vehicle with undercover plates. Floor Debate onLB 256, 95th Neb. Leg., 1st Sess. 31-32 (April 9, 1997). We understand this as a somewhat equivocal "yes, they may provide them to other law enforcement agencies." Nothing was done to amend the language to specify that authorized agencies could not lend the plates to another agency to accomplish a mutual and authorized goal; i.e. "legitimate criminal investigatory purposes".
The fact no amendment was offered in this regard, the traditional cooperation between law enforcement agencies, the legislative encouragement of such cooperation found in statutes like the Interlocal Cooperation Act, Neb. Rev. Stat. § 13-801et seq. and statutes dealing with drug enforcement, particularly Neb. Rev. Stat. § 28-430, support our conclusion.
One may ask whether allied state or local agencies must be treated differently from federal ones, particularly since Senator Chambers was successful in his effort to remove federal law enforcement from the bill's original list of authorized recipients. We are of the view that it is the purpose to which the plates will be put, rather than the identity of the jurisdiction the borrowing agency serves, that is most important. This conclusion is supported by the fact that the sponsor's comment about the sharing of the plates with the F.B.I. did not lead to an amendment to restrict such plate-sharing. Also, when explaining his move to take federal agencies off the authorized recipients list, the senator said that if the F.B.I. was going to use undercover plates, he did not want it to be done with the Legislature's explicit authorization. Floor Debate on LB 256, 95th Neb. Leg., 1st Sess. 38 (April 9, 1997). In other words, direct issuance to federal agencies is impermissible, but a recipient may make a loan of the plate if it chooses and if that arrangement is approved by the Director of the Department of Motor Vehicles pursuant to Neb. Rev. Stat. § 60-304(3).
This raises the related question of whether the restriction in the second sentence of section 60-304 limits the Patrol to issuing the plates for "state law enforcement purposes", as opposed to the general "criminal investigatory purposes" found in the first sentence of section 60-304, and, if so, whether this prevents the Patrol from loaning a plate to a federal agency for federal law enforcement purposes or to a local law enforcement agency which is investigating a city ordinance violation. In our opinion, the two sentences are complementary. The proponent of the bill acknowledged some redundancy in these provisions and did not view them as mutually exclusive. Floor Debate on LB 256, 95th Neb. Leg., 1st Sess. 16-17 (Feb. 26, 1997). The second sentence may supplement the first by authorizing the use of the plates with some of the enforcement work done by the named entities in the civil realm, such as some of the work done by the Patrol's Carrier Enforcement Division.
Finally, in our opinion, since the Legislature neither expressly approved nor prohibited the loaning of undercover plates, this is an issue for administrative interpretation by the Department of Motor Vehicles. Neb. Rev. Stat. § 60-304(3) provides as follows:
 Upon receipt of a completed form, the director shall determine whether the undercover license plates will be used by an approved agency for a legitimate purpose pursuant to subsection (1) of this section. If the director determines that the undercover license plates will be used for such a purpose, he or she may issue the undercover plates in the form and under the conditions he or she determines to be necessary. The decision of the director regarding issuance of the undercover license plates is final.
Your opinion request letter does not specify whether the Director of the Department of Motor Vehicles has authorized undercover license plates for the State Patrol to be loaned to the FBI or other criminal law enforcement agencies. If he has, then in the absence of any statutory prohibition on the loaning of plates and in view of the statute making the Director's decision final, this administrative decision cannot appropriately be called into question.
Sincerely,
 DON STENBERG Attorney General
 Mark D. Starr Assistant Attorney General
APPROVED BY:
Don Stenberg 
Attorney General